
FILED
 2008 Feb-25  AM 09:44
U.S. DISTRICT COURT
    N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMEISKA D. CAMPBELL, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ]   2:07-CV-0119-LSC |
| | ] |
| MICHAEL J. ASTRUE, | ] |
| Commissioner, | ] |
| Social Security Administration, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.  Introduction.

The claimant, Jameiska D. Campbell, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Ms. Campbell timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Campbell was twenty-seven years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a ninth grade education. (Tr. at 21.) Her past work experience includes employment as a certified nursing assistant, cashier, telemarketer, and grill cook. *Id*. Ms. Campbell claims that she became disabled on January 31, 2003, due to cervical and lumbar scoliosis and depression. *Id*.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends

on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to

consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Campbell met the nondisability requirements for a period of disability and DIB, and was insured through the date of his decision.  (Tr. at 33.)  He further determined that Ms. Campbell has not engaged in substantial gainful activity since the alleged onset of her disability.  *Id.*  According to the ALJ, Plaintiff's borderline IQ, depression, anxiety and congenital spine disorder are considered "severe" based on the requirements set forth in the regulations.  *Id.*  However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.  *Id.*  The ALJ did not find Ms. Campbell's allegations to be totally credible, and he determined that she has the following residual functional capacity:  "perform medium work which allows a sit/stand option; occasional bending, stooping, squatting, crawling, or climbing; with

no pushing or pulling involving the lower extremities; and no unrestricted heights." *Id*.

The ALJ concluded that Ms. Campbell's previous telemarketing job "did not require the performance of work-related activities precluded by her residual functional capacity." *Id*. at 34. Accordingly, the ALJ entered a finding that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." *Id*.

II.     Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh

evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion.

Ms. Campbell alleges that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded for three reasons. (Doc. 7 at 2-13.) First, she believes the ALJ failed to properly apply the three-part pain standard applied by the Eleventh Circuit. *Id*. at 4. Second, Ms. Campbell claims the ALJ did not afford proper consideration to the medical evidence of record, which included the opinions of her treating physician and consultative physician. *Id*. at 8. Finally, Ms. Campbell claims there is no basis to the residual functional capacity assessed by the ALJ. *Id*. at 11.

   A.    Three-Part Pain Standard.

Plaintiff contends that she meets the three-part pain standard applied by the Eleventh Circuit. (Doc. 7 at 4.) In order to establish complaints of pain or other subjective symptoms, a Plaintiff must show:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Although such evidence is itself sufficient for a finding of disability, the ALJ may elect not to credit the plaintiff's subjective complaints. *See Id.* If the ALJ discredits Plaintiff's subjective description of her condition, "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). However, the ALJ must explicitly discredit the testimony and must articulate sufficient reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). In assessing credibility of Plaintiff's statements, factors in addition to objective medical evidence should be considered, which include daily activities, as well as medication and its effects. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987).

In this case, it is clear Ms. Campbell met the first prong of the Eleventh Circuit's pain standard. However, the ALJ did not believe that the evidence confirmed the severity of the alleged pain arising from the condition or that any impairment of such severity could reasonably be

expected to give rise to the disabling pain and other limitations alleged by Plaintiff. (Tr. at 28.) Additionally, the ALJ did not find Plaintiff's subjective complaints to be completely credible. *Id.*

Plaintiff relies mainly upon the opinion of her treating physician, Dr. Rafael Coplin, and her own testimony to corroborate her claims of pain. (Doc. 7 at 5.) On July 15, 2003, Dr. Coplin diagnosed Plaintiff with degenerative disc disease, cervical herniated disc, and severe rotoscoliosis of the lumbar spine. (Tr. at 234.) Also in 2003, Dr. Coplin found Plaintiff continued to have bilateral upper and lower extremity radicular symptoms and weakness with a limited range of motion and tenderness in the upper thoracic spine, and rated her pain at a five on a five-point scale. *Id.* at 225, 228.

In addition to Dr. Coplin's findings, Plaintiff testified her abilities to sit, stand, and walk were affected by significant pain, and that she had severe deteriorating congenital retro-scoliosis. *Id.* at 275. She also testified she would rate her pain as an 8 out of 10 on a 10-point scale; she must lie down for five to six hours a day; she could sit for thirty minutes and stand

for ten minutes; and, a gallon of milk would be the heaviest thing she could lift.  *Id*. at 281-82.

However, as the ALJ noted, in August 2003, Dr. Coplin reported Plaintiff had "improved dramatically" and Lortab made her pain "go away completely."  *Id*. at 189.  Additionally, Dr. John R. Weaver, of the Cooper Green Orthopedic Clinic, found that Plaintiff had a congenital spine deformity, but functioned "fairly well," and she was "o.k. to work - may want to avoid heavy lifting."  *Id*. at 205.  The ALJ also noted Plaintiff herself stated that she was able to perform daily activities including:  laundry, mopping, sweeping, cooking, getting her son ready for school, taking him to ball practice, and performing four to five hours of housework.  *Id*. at 27, 77-78, 158, 294-96.

For these reasons, the Court is of the opinion that the ALJ had good cause for not finding Plaintiff's claims of disability credible.  The ALJ properly set out the reasons for his findings.

  B. Medical Evidence of Record.

Plaintiff claims the ALJ did not properly consider the opinions of Plaintiff's treating physician, Dr. Rafael Coplin, and Plaintiff's consultative physician, Dr. Norman D. Huggins, in reaching his conclusions. (Doc. 7 at 8.) In determining disability, a treating physician's opinion is to be given "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (internal quotations omitted)). The weight to be afforded a medical opinion concerning the nature and severity of a claimant's impairments depends upon several factors, including, the examining and treating relationship between the medical source and the claimant, the supporting evidence presented by the medical source, the consistency of the opinion with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). If a physician's opinion is not supported by the evidence, or if the opinion is not consistent with the doctor's own records, there is cause to discount the opinion. *Crawford*, 363 F.3d at 1159; *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

1. Dr. Rafael Coplin.

Plaintiff claims the ALJ improperly disregarded the opinion of her treating physician, Dr. Rafael Coplin, in finding that his opinion was not supported by the medical evidence of record. (Doc. 7 at 8.) As to Plaintiff's pain, in April 2005, Plaintiff's counsel prepared and provided Dr. Coplin with a "Clinical Assessment of Pain" that he was to complete. (Tr. at 242-244.) Dr. Coplin opined, among other things, that with respect to Plaintiff, "[p]ain is present to such an extent as to be distracting to adequate performance of daily activities or work;" physical activity would lead to "[g]reatly increased pain and to such a degree as to cause distraction from tasks or total abandonment of tasks;" and, the side effects of drugs will be severe and "limit effectiveness due to distraction, inattention, drowsiness, etc." *Id.*

However, the ALJ found Dr. Coplin's assessment of Plaintiff's pain was inconsistent with the findings of several other doctors who examined Plaintiff. (Tr. at 29.) Dr. Matthew Berchuck treated Plaintiff for neck pain. *Id.* In reviewing MRIs, he found there was no tethering of the spinal cord,

syrinx, or Chiari malformation. *Id.* at 152. Dr. Weaver also noted that in spite of her spinal impairment, Plaintiff was functioning "fairly well" and was "o.k. to work." *Id.* at 29, 205. Finally, Dr. Jonathan Lindman, who examined Plaintiff in April 2003, determined Plaintiff had no limitations with sitting, walking, standing, carrying, or lifting. *Id.*

With respect to Plaintiff's ability to perform work-related activities, Dr. Coplin referred Plaintiff to an orthopedist, and left it to the orthopedist, Dr. Weaver, to determine when Plaintiff could return to work. (Tr. at 29.) Dr. Weaver, as has already been noted, stated Plaintiff was "o.k. to work - may want to avoid heavy lifting." *Id.* and at 205. The ALJ found Dr. Coplin's actions to be an obvious deferral to the orthopedist's opinion. *Id.* at 29. Due to Dr. Coplin's deferral, the ALJ gave little weight to Dr. Coplin's opinion regarding Plaintiff's ability to perform work-related activities. *Id.*

Because Dr. Coplin referred Plaintiff to an orthopedist to determine when she could return to work, and the fact that Dr. Coplin's opinion was inconsistent with the opinions of Plaintiff's other physicians, the weight given to the medical evidence is supported by substantial evidence.

      2.     Dr. Norman D. Huggins.

The final argument Plaintiff makes with respect to medical evidence of record is that the ALJ failed to properly give weight to the consultative psychiatrist, Dr. Norman D. Huggins. (Doc. 7 at 9.) Plaintiff claims the ALJ never addressed the weight given to Dr. Huggins' opinion, but merely stated there were some inconsistencies in the opinion. *Id.* At the request of the ALJ, Dr. Huggins performed a consultative exam on Plaintiff on June 4, 2005. (Tr. at 245-50.) Dr. Huggins concluded that Plaintiff was incapable of conducting business on her own behalf, required assistance with her financial affairs, and was overwhelmed by routine daily activities. *Id.* at 247. Further, he determined Plaintiff to be an individual with immature coping skills who was easily overwhelmed by minor stress, and whose suicidal thoughts and depression contributed to her inability to cope. *Id.* at 248. Dr. Huggins noted Plaintiff's Global Assessment of Functioning ("GAF") to be 50.[1] *Id.* Finally, in the "Medical Source Opinion Form (Mental)," while

---

[1] A GAF score between 41 and 50 suggests "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep job)." *Diagnostic and Statistical Manual of Mental Disorders-Text Revision*, 34 (4th ed. 2000) (DSM-IV-TR).

Dr. Huggins found Plaintiff to have a marked limitation in her ability to understand, remember, and carry out detailed or complex instructions, he found only a mild limitation in her ability to appropriately respond to coworkers, and a moderate limitation of function in all other areas.  *Id.* at 249-50.

The ALJ noted Plainitiff's restriction in remembering and carrying out instructions, and Dr. Huggin's finding of a GAF score of 50.[2]  (Tr. at 31.)  However, the ALJ recognized that these findings were only a portion of Dr. Huggins's complete report.  In examining the entirety of the report, the ALJ focused on the mild and moderate limitations found by Dr. Huggins, and determined Plaintiff had "no greater than moderate restrictions of daily living; no difficulties in maintaining social functioning; less than marked difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation each of extended period."  *Id.*  Therefore, Plaintiff's claim that the ALJ did not consider Dr. Huggin's report is contrary

---

[2]In general, a "GAF score of 50 or below is not in and of itself determinative of disability."  *Jones v. Astrue*, 494 F.Supp. 2d 1284, 1288 (N.D. Ala. 2007) (citing *inter alia Hillman v. Barnhart*, 48 Fed. Appx. 26, 2002 WL 31260962 at *3, n. 1 (3rd Cir. 2002) (noting that a GAF of 50 would indicate a claimant could perform some substantial gainful activity).

to the record. In determining Plaintiff's restrictions, the ALJ considered all aspects of the report, not just the portions stressed by Plaintiff.

Based on the Court's review of the record, the ALJ properly considered all medical evidence of record, including the opinions of Plaintiff's treating physician and her consultative physician.

C.   Residual Functional Capacity.

Plaintiff contends that the ALJ's residual functional capacity assessment is "baseless" in that it is not supported by any medical assessments. (Doc. 7 at 11.) An individual's RFC is an example of an issue that is administrative in nature, not a medical issue. Soc. Sec. Rul. 96-5p, 1996 WL 374183 at *2 (S.S.A.). The Commissioner decides administrative issues and the Commissioner's regulations put the ultimate responsibility of determining RFC with the ALJ. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546(c), 416.927(e)(2), 416.945(a)(3), 416.946(c); SSR 9605p, 1996 WL 374183 at *5. His decision must be based not only upon the medical evidence, but upon all evidence in the record. *Id*. Further, while medical opinions are to be weighed by the ALJ, an RFC finding will not be

invalidated due to the absence or discrediting of a medical opinion. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

In the instant case, the ALJ found Plaintiff retained the RFC to "perform medium work which allows a sit/stand option; occasional bending, stooping, squatting, crawling, or climbing; with no pushing or pulling involving the lower extremities; and no unrestricted heights." (Tr. at 32.) Plaintiff claims the ALJ's decision was not based on substantial evidence in that he provided no rationale as to how he determined the RFC. (Doc. 7 at 11.) Plaintiff's argument is without merit. As has already been discussed, the ALJ provided rationale as to his determination through not only the opinions previously noted of Dr. Coplin, Dr. Weaver, Dr. Lindman, and Dr. Huggins, but also through Plaintiff's testimony. The Court finds the ALJ's RFC determination is properly supported by the evidence on record.

IV.   Conclusion.

Upon review of the administrative record, and considering all of Ms. Campbell's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 25th day of February 2008.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671